IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**ERIKA CORDOVA,**

        **Plaintiff,**

v.

**TEXTRON AVIATION, INC.,**

        **Defendant.**

Case No. 23-1233-DDC

**MEMORANDUM AND ORDER**

Before the court is plaintiff Erika Cordova's Motion for Leave to Appeal In Forma Pauperis (Doc. 39) and Motion for Relief from Procedural Error (Doc. 43). Plaintiff, proceeding pro se,[1] alleges that her employer—defendant Textron Aviation, Inc.—discriminated, harassed, and retaliated against her on the basis of sex, race, and national origin, violating Title VII of the 1964 Civil Rights Act (42 U.S.C. § 2000e) and 42 U.S.C. § 1981. Doc. 24 at 11 (Pretrial Order ¶ 4.a.). The court granted summary judgment in defendant's favor. Doc. 36; Doc. 37 (Judgment). On appeal, plaintiff seeks to proceed without prepayment of fees. Doc. 39 at 1. She also requests that the court excuse her delay in notifying defendant of her intent to appeal. Doc. 43 at 1. And she asks the court to appoint counsel. *Id.* at 2. For the reasons explained below, the court denies plaintiff's requests.

---

[1]     Plaintiff proceeds pro se, so the court construes her pleadings liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that courts must construe pro se litigant's pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers). But the court does not assume the role of plaintiff's advocate. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). And our Circuit "has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." *Id.* (citation and internal quotation marks omitted).

I.      **Motion to Proceed In Forma Pauperis (IFP) on Appeal (Doc. 39)**

     A.      **Legal Standard**

Title 28 U.S.C. § 1915(a)(1) authorizes the court to permit a plaintiff to appeal without prepayment of fees where the plaintiff satisfies certain conditions. A "party to a district-court action who desires to appeal in forma pauperis [IFP] must file a motion in the district court." Fed. R. App. P. 24(a)(1). To appeal IFP, a plaintiff must "demonstrate [1] a financial inability to pay the required filing fees and [2] the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal." *Watkins v. Leyba*, 543 F.3d 624, 627 (10th Cir. 2008) (quotation cleaned up).

To address the first IFP requirement, the appealing "party must attach an affidavit that . . . shows . . . the party's inability to pay[.]" Fed. R. App. P. 24(a)(1)(A). The court then evaluates the party's application "in light of the applicant's present financial status." *Scherer v. Kansas*, 263 F. App'x 667, 669 (10th Cir. 2008). When one's "monthly income exceeds [her] monthly expenses by a few hundred dollars[,]" then she has "sufficient income to pay the filing fees[.]" *Brewer v. City of Overland Park Police Dep't*, 24 F. App'x 977, 979 (10th Cir. 2002). The court considers "the total monetary resources available to assist plaintiff," so "it is appropriate to consider a spouse's income" as well. *Protheroe v. Masarik*, No. 18-cv-2128-JAR-TJJ, 2018 WL 3213322, at *1 (D. Kan. Apr. 12, 2018) (quotation cleaned up), *report and recommendation adopted*, 2018 WL 2113235 (D. Kan. May 8, 2018). But income isn't the whole story. *See id.* (considering plaintiff's income, spouse's income, vehicle ownership, and home ownership in recommending denial of IFP status). Because § 1915(a) requires the applicant to provide a statement of *all* assets, "the statute implies that the court is to determine the applicant's ability to pay based on the applicant's assets, not merely his or her income."

*Scherer v. Kansas*, No. 06-2446-JWL, 2006 WL 3147731, at *2 (D. Kan. Nov. 1, 2006), *aff'd*, 263 F. App'x 667 (10th Cir. 2008). "Indeed, federal courts have historically looked to assets such as equity in real estate and automobiles in determining eligibility for IFP status." *Id.* (collecting cases).

The second IFP requirement concerns the basis for the appeal. "An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." 28 U.S.C. § 1915(a)(3). When deciding if an appeal is taken in good faith, "merit or lack of merit is not the test." *Ragan v. Cox*, 305 F.2d 58, 60 (10th Cir. 1962). Instead, the court "should only reach the question of whether the appellant has presented a reasoned and nonfrivolous argument." *United States v. Chavez*, No. 20-cr-2040 RB, 2025 WL 988055, at *1 (D.N.M. Apr. 2, 2025) (citing *Ragan*, 305 F.2d at 59–60).

### B.   Analysis

The court applies the two IFP-on-appeal requirements to plaintiff's motion. *First*, the court assesses plaintiff's financial inability to pay the required filing fee. *Then*, the court evaluates the existence of a reasoned, nonfrivolous argument. The court concludes plaintiff meets neither requirement. And so, it denies her IFP motion.

### 1.   Plaintiff's Financial Inability to Pay

The affidavit plaintiff attached to her pending IFP motion fails to establish her inability to pay the appellate filing fee. According to her affidavit, plaintiff and her spouse both work and, it appears, each earns a monthly income that exceeds $5,000. Doc. 39-1 at 3.[2] Indeed, plaintiff's

---

[2]   Plaintiff's affidavit is difficult to decipher. She lists a bi-weekly income for her spouse. *See* Doc. 39-1 at 3 (identifying first amount listed with qualifier "every two weeks"). So, it seems one could double this amount and calculate her spouse's approximate monthly income. But the monthly income amount plaintiff lists for her spouse comes in at nearly triple his bi-weekly income, creating an apparent discrepancy. *See id.* To resolve this discrepancy, the court notes that plaintiff specified her spouse's total monthly income is "before taxes or other deductions." *Id.* No such specification accompanies the bi-

3

attested income, combined with her spouse's income, exceeds her reported expenses by a few thousand dollars. *Id.* at 3, 6–7.[3] What's more, plaintiff's affidavit indicates her savings account alone holds more than the required filing fee. *See id.* at 4. Plaintiff also reports multiple assets, including a home, another real estate holding, and two motor vehicles. *Id.* at 4–5. Each category by itself—income, savings, and assets—demonstrates plaintiff possesses sufficient funds to pay the filing fee. And when the court takes all three categories together, that conclusion becomes unavoidable. Plaintiff thus fails to satisfy the first requirement to proceed IFP on appeal. But even if she had satisfied this requirement, plaintiff's IFP application would fail on requirement number two.

### 2.     A Reasoned, Nonfrivolous Argument

---

weekly amount. The court thus resolves this ambiguity by inferring that plaintiff listed the bi-weekly amount *after* taxes and deductions. But the form explicitly instructs plaintiff to list "gross monthly pay," defining that to include income "before taxes or other deductions." *Id.* So, the court utilizes the monthly income amounts for plaintiff and her spouse described with the qualifier "before taxes or other deductions" as the proper gross monthly pay amounts. Each of these monthly amounts—independently—exceeds $5,000.

Even if the court's wrong to interpret the income amounts this way, plaintiff's savings and other assets—apart from income—lead the court to the same conclusion as the income amounts do: plaintiff's funds suffice to pay the filing fee. Plus, out of an abundance of caution, the court evaluates plaintiff's IFP motion on the nonfrivolous-argument requirement, as well. Again, the same conclusion follows. So, although the affidavit is far from clear, plaintiff's other finances and the frivolity of her argument mitigate any lack-of-clarity concerns the court might hold otherwise.

[3]     The financial affidavit's lack of clarity also complicates the court's efforts to total plaintiff's expenses. Of particular note are two sets of identical sums. Plaintiff lists the exact same amount—down to the cent—separately as both a monthly motor vehicle installment payment and a monthly motor vehicle insurance payment. Doc. 39-1 at 6. Plaintiff also lists the exact same amount separately as both a monthly homeowner's insurance payment and a monthly home-mortgage payment. *Id.* To be clear, the form plaintiff utilized asked for each of these four items separately, so plaintiff likely followed the form's lead. *See id.* The court infers that each set of identical sums represents one monthly payment—not two separate payments. It bases this inference on the unlikelihood that a vehicle's installment payment and a vehicle's insurance payment would total the same amount, down to the cent. A similar unlikelihood applies to the monthly homeowner's insurance and mortgage payment amounts. As indicated in the previous footnote *see* note 2, other portions of plaintiff's affidavit would suffice individually to support the court's sufficient-funds conclusion—such as the total listed in plaintiff's savings account and plaintiff's real estate assets. *See id.* at 4. So, any risk of misinterpreting plaintiff's expenses proves less concerning where multiple bases support a no-financial-inability finding.

4

Federal Rule of Appellate Procedure 24(a)(1)(C) requires a party seeking to proceed IFP on appeal to "state[] the issues that the party intends to present on appeal." The portion of plaintiff's affidavit that addresses the issues on appeal includes the following statement: "Attached are some documents that explain why I'm appealing the decision of the court." Doc. 39-1 at 2 (quotation cleaned up). But plaintiff never attached any documents other than her financial affidavit. *See* Doc. 39. This omission makes it difficult for the court to evaluate the reasonableness or frivolity of plaintiff's appeal basis. Hoping to glean more insight, the court reviewed plaintiff's earlier letter—docketed as a Notice of Appeal. Doc. 38. There, plaintiff explained that the attorneys in the case—both defense counsel and plaintiff's own counsel—failed to submit exhibits and evidence crucial to plaintiff's case. *Id.* at 1. And plaintiff contends that "these failures by counsel and the lack of opportunity to present [her] evidence led to an unjust dismissal of [her] case." *Id.* Privy to no other clues, the court thus assumes that plaintiff's argument on appeal centers on counsels' alleged shortcomings.

But an argument about the ineffectiveness of one's counsel doesn't provide a nonfrivolous basis for appeal. "The general rule in civil cases is that the ineffective assistance of counsel is not a basis for appeal or retrial." *Nelson v. Boeing Co.*, 446 F.3d 1118, 1119 (10th Cir. 2006) (internal citation omitted) (refusing to find that Title VII creates statutory right to effective assistance of counsel). "If a client's chosen counsel performs below professionally acceptable standards, with adverse effects on the client's case, the client's remedy is not reversal[.]" *Id.*; *see also Xu v. Denv. Pub. Schs., Sch. Dist. No. 1*, No. 23-1079, 2024 WL 448290, at *7 (10th Cir. Feb. 6, 2024) (citing *Nelson* when concluding "attorney's performance in responding to the renewed motion for summary judgment" isn't an issue properly raised on appeal); *Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1169 (10th Cir. 2003) ("[P]laintiffs have

5

no Sixth Amendment right to counsel in a civil case.  Counsel's performance, however deficient, would not therefore form the basis for reversal of the trial court." (internal citation omitted)).  Any argument, therefore, premised on counsel's failures "is based on an indisputably meritless legal theory" and thus is frivolous.  *Schlicher v. Thomas*, 111 F.3d 777, 779 (10th Cir. 1997) (quotation cleaned up).

Plaintiff supplies no other reasoned or nonfrivolous argument to challenge the district court's summary judgment ruling.  *See generally* Doc. 39.  So, the court concludes, plaintiff also fails the second requirement for a successful appellate IFP request and denies her motion as not taken in good faith.  That conclusion leaves plaintiff's Motion for Relief from Procedural Error (Doc. 43), which the court takes up, next.

## II.     Motion for Relief from Procedural Error (Doc. 43)

The main thrust of plaintiff's other pending motion requests that the court excuse her delay in notifying defendant of her intent to appeal.  Doc. 43 at 1.  The court finds this request moot.  The court entered Judgment in this case on April 30, 2025.  Doc. 37.  So, plaintiff had until May 30, 2025, to file a notice of appeal.  *See* Fed. R. App. P. 4(a)(1)(A) ("In a civil case, . . . the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from.").  The docket reflects that plaintiff filed a document which the court construed as a notice of appeal on May 23, 2025—easily within the 30-day window.  Doc. 38.  Thus, to the extent plaintiff's motion asks the court to excuse delayed notification, the motion is moot.  According to the docket, plaintiff wasn't tardy in providing notice of her intent to appeal.

Plaintiff's motion also asks the court—in passing—to appoint her an attorney.  Doc. 43 at 2.  It asserts that plaintiff is "financially unable to afford an attorney."  *Id.*  And it contends that

6

plaintiff "ha[s] struggled to secure legal counsel[.]" *Id.* at 1.  But it offers little else in support of plaintiff's request.

In employment discrimination cases like this one, Title VII provides that the court may appoint counsel "in such circumstances as the court may deem just."  42 U.S.C. § 2000e-5(f)(1).  Before appointing counsel, our Circuit requires that a "plaintiff must make affirmative showings of (1) financial inability to pay for counsel, (2) diligence in attempting to secure counsel and (3) meritorious allegations of discrimination."  *Castner v. Colo. Springs Cablevision*, 979 F.2d 1417, 1421 (10th Cir. 1992).  And our Circuit instructs the court to consider a "fourth factor—the plaintiff's capacity to present the case without counsel"—but just in "close cases[.]"  *Id.*  Our Circuit also directs district courts to give requests for counsel in Title VII cases "serious consideration[.]"  *Id.* (quotation cleaned up).  At the same time, though, the Circuit cautions that "indiscriminate appointment of volunteer counsel to undeserving claims will waste a precious resource and may discourage attorneys from donating their time."  *Id.*

Earlier in this case, United States Magistrate Judge Gwynne E. Birzer appointed plaintiff an attorney for the limited purpose of responding to defendant's summary judgment motion.  Doc. 25 at 3.  Judge Birzer determined that plaintiff had satisfied all of the *Castner* factors.  But plaintiff made that earlier appointment request in different circumstances.  And plaintiff's earlier request was significantly more fulsome than the present one.

The first two *Castner* factors—financial inability and diligence in securing an attorney—both proved more compelling in plaintiff's earlier motion.  Start with financial need.  Plaintiff's earlier request explained financial hardships unique to that time period.  For example, when she filed the earlier motion, plaintiff was on strike from her job—and had been for five weeks—receiving only a "strike pick income."  Doc. 22 at 5.  Her husband's income was also in question,

as her motion indicated he would experience a furlough starting just days after the filing. *Id.* at 4. And so, plaintiff explained that her "income [was] limit[ed] at th[at] time to afford a lawyer[.]" *Id.* Plaintiff's present motion doesn't mention any current threats to her or her spouse's receipt of their full monthly incomes. *See generally* Doc. 43. It simply asserts a financial inability without offering any support for that assertion. *Id.* at 1. And the court already reviewed the financial affidavit plaintiff filed with her IFP-on-appeal motion, Doc. 39-1. In its review, the court found evidence of excess income, savings, and multiple assets, including real estate holdings and motor vehicles. The court thus concludes that plaintiff has failed to "make [an] affirmative showing[]" of financial inability to pay for counsel. *Castner*, 979 F.2d at 1421. The first *Castner* factor thus weighs against appointing plaintiff counsel on appeal.

Plaintiff fares no better in her attempt to show *Castner*'s second factor affirmatively—"diligence in attempting to secure counsel[.]" 979 F.2d at 1421. In her earlier, successful appointment motion, plaintiff specified by name six attorneys she had contacted to represent her. Doc. 22 at 2–3. And she outlined the reason each attorney had refused. *Id.* (identifying refusals premised on excessive workload, the case's status as already-in-progress, and an unwillingness to take civil cases). Here, though, plaintiff simply explains that her former counsel couldn't continue with the case and that the attorney referral provided by her former counsel didn't pan out because of workload concerns. Doc. 43 at 1. Plaintiff goes no further. And that's just not enough.

Our court expects a plaintiff in a civil case to confer with at least five attorneys before requesting appointment of counsel. *Sullivan v. Sullivan*, No. 24-CV-2214-EFM-TJJ, 2025 WL 1126778, at *2 (D. Kan. Mar. 21, 2025), *report and recommendation adopted*, No. 24-2214-EFM-TJJ, 2025 WL 1125573 (D. Kan. Apr. 16, 2025). Indeed, courts in our district routinely

deny requests for appointed counsel in civil cases where a party consults only a few attorneys. *See Escalante v. Burmaster*, No. 23-cv-2130-TC-TJJ, 2023 WL 3159590, at *1 (D. Kan. Apr. 28, 2023) ("Plaintiff lists the names of three attorneys who he contacted regarding legal representation and the responses he received. The Court typical[ly] requires a plaintiff in a civil case to confer with at least <u>five</u> attorneys . . . before seeking an appointed attorney. The Court therefore finds that Plaintiff failed to make an affirmative showing[.]" (emphasis in original)); *Williams v. Long*, No. 21-1141-HLT-GEB, 2021 WL 4439445, at *2 (D. Kan. Sept. 28, 2021) (concluding second *Castner* factor weighs against appointing counsel and denying appointment motion where plaintiff just contacted two attorneys); *Fantroy v. Comm'r of Soc. Sec. Admin.*, No. 18-1272-KHV-GEB, 2018 WL 6305653, at *2 (D. Kan. Dec. 3, 2018) (same). And, having previously filled out the court's form to request appointment, plaintiff would have known of the court's five-attorney expectation. *See* Doc. 22 at 2–3; *Fantroy*, 2018 WL 6305653, at *2 ("[T]he Court's form Motion to Appoint Counsel clearly explains the Court expects a party to confer with at least five attorneys prior to seeking appointed counsel."). The second *Castner* factor thus also weighs against appointing counsel here.

Perhaps most decisively, however, plaintiff's appeal appears to lack merit. As far as the court can discern, plaintiff intends to argue on appeal that her counsel and defense counsel excluded crucial evidence that resulted in an improper dismissal by the court. Doc. 38 at 1. But, as the court explained above, that argument is frivolous on appeal in a civil case. And so, even were plaintiff to demonstrate financial need and outline five unsuccessful attempts to secure an attorney to represent her on appeal—which she hasn't—the merits of her appeal would remain dubious. The court would hesitate, therefore, to appoint counsel because such an appointment

9

risks "wast[ing] a precious resource" and "discourag[ing] attorneys from donating their time." *Castner*, 979 F.2d at 1421.  The court thus denies plaintiff's request to appoint counsel.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff Erika Cordova's Motion for Leave to Appeal In Forma Pauperis (Doc. 39) is denied.  The court certifies that the appeal is not taken in good faith.  The court directs the Clerk of the Court to notify the Court of Appeals of this denial and certification.

**IT IS FURTHER ORDERED THAT** plaintiff Erika Cordova's Motion for Relief from Procedural Error (Doc. 43) is denied in part as moot and denied in part on the merits.

**IT IS SO ORDERED.**

**Dated this 10th day of December, 2025, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**
